UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DUANE ALVIN GILBERT,

                     Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05007-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the

remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be reversed and this matter should be remanded for further

administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On September 11, 2012, plaintiff filed an application for SSI benefits, alleging disability

as of January 1, 2007. *See* Dkt. 10, Administrative Record ("AR") 17. This application was

denied upon initial administrative review, and plaintiff filed a written request for hearing on June

ORDER - 1

20, 2013. *See id.* Plaintiff did not appear at the hearing, and the request was dismissed. *See id.* Plaintiff appealed the decision, and the Appeals Council granted the request for review. *See id.* Subsequently, a video hearing was held before an administrative law judge ("ALJ") on April 16, 2014, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 35-67.

In a decision dated June 26, 2014, the ALJ determined plaintiff to be not disabled. *See* AR 14-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 10, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-4; 20 C.F.R. § 416.1481. On January 6, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on March 27, 2015. *See* Dkt. 10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

(1) in evaluating the opinion evidence from Minerva Arrienda, M.D., Bruce Walton, LMHCA, Erum Khaleeq, M.D., and Laura Leydon, ARNP;

(2) in discounting plaintiff's credibility;

(3) in rejecting the lay witness evidence from plaintiff's family;

(4) in assessing plaintiff's residual functional capacity ("RFC"); and

(5) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinions

ORDER - 2

of Dr. Khaleeq and Ms. Leydon, in assessing plaintiff's RFC and in finding plaintiff capable of performing other jobs, and therefore in determining him to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

ORDER - 3

1    *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

2    I.    The ALJ's Evaluation of the Medical Evidence in the Record

3            The ALJ is responsible for determining credibility and resolving ambiguities and

4    conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

5    Where the medical evidence in the record is not conclusive, "questions of credibility and

6    resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639,

7    642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." *Morgan v.*

8    *Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining

9    whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

10   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

11   within this responsibility." *Id.* at 603.

12           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

13   "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this

14   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

15   stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences

16   "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may

17   draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

18   F.2d 747, 755 (9th Cir. 1989).

19

20

21

22   _____

23   [1] As the Ninth Circuit has further explained:

24           . . . It is immaterial that the evidence in a case would permit a different conclusion than that
         which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
25       substantial evidence, the courts are required to accept them. It is the function of the
         [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
26       not try the case de novo, neither may it abdicate its traditional function of review. It must
         scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
         rational. If they are . . . they must be upheld.

     *Sorenson*, 514 F.2d at 1119 n.10.

     ORDER - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

a.    *Dr. Khaleeq*

On May 2, 2013, Dr. Khaleeq performed an evaluation of plaintiff, which included a mental status examination ("MSE"). *See* AR 376-80. Dr. Khaleeq diagnosed plaintiff with a major, recurrent depressive disorder and a possible posttraumatic stress disorder. *See* AR 378. Dr. Khaleeq opined that plaintiff could perform simple and repetitive tasks but would have

difficulty accepting instructions from supervisors, may have difficulty with co-workers and the public, and may have difficulty performing work activities on a consistent basis due to loss of interest. *See* AR 378-79. Dr. Khaleeq also opined that the "usual stress encountered in the workplace will further aggravate his psychiatric condition." AR 379. The ALJ gave Dr. Khaleeq's opinion some weight but discounted it because it appeared "the doctor relied heavily on [plaintiff's] subjective report of symptoms and limitations," which the ALJ did not find to be credible. AR 26. Plaintiff asserts the ALJ erred in rejecting Dr. Khaleeq's opinion on this basis. The Court agrees.

An ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan*, 169 F.3d at 602 (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Therefore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan, supra*, 528 F.3d at 1199-1200).

Although Dr. Khaleeq appears to have relied on plaintiff's subjective reporting to some extent in forming his conclusions such as in regard to the ability to maintain attendance (*see* AR

ORDER - 6

379), there is no indication that he based the remainder of conclusions more heavily on those reports than his own clinical observations. For example, Dr. Khaleeq opined that plaintiff "would have difficulty accepting instructions from supervisors *as he required many cues to provide history and to stay focused*," and that he "may have difficulty with co-workers and the public *as he does not come across as a social person*." AR 378 (emphasis added). Dr. Khaleeq's mental status examination results also provide support for his conclusions. *See* AR 377 (observing that plaintiff's attitude was guarded, that he made no eye contact, that his stream of mental activity was somewhat slow, that his mood was depressed, and that he was "psychomotorically retardated [sic]"). Thus, the ALJ's finding that Dr. Khaleeq's assessment was based largely on plaintiff's self-reported symptoms is not supported by the substantial evidence in the record.

Defendant argues the ALJ did not adopt Dr. Khaleeq's opinion that plaintiff would have difficulty accepting instructions from supervisors because that limitation was inconsistent with the results of the mental status examination. "Long-standing principles of administrative law," however, require that the ALJ's decision be reviewed "based on the reasoning and actual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking" (*Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citation omitted)), and as discussed above, the ALJ did not state he was rejecting the above limitation on the basis asserted by defendant (*see* AR 26).

b.    *Ms. Leydon*

On August 14, 2012, Ms. Leydon performed a physical evaluation of plaintiff, opining that he had postural restrictions and that he might be capable of seated work so long as it did not

require "[f]ine motor control of upper extremities." AR 351. The ALJ gave this opinion little weight because it did not specifically describe plaintiff's level functioning, and because it did not qualify as an acceptable medical source's opinion. *See* AR 26. Plaintiff argues the ALJ failed to provide valid reasons for rejecting Ms. Leydon's opinion here. Again, the Court agrees.

It is true that as a nurse practitioner, Ms. Leydon is not an "acceptable medical source," and thus her opinion may be given less weight than those of acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). Instead, the opinions of sources such as Ms. Leydon generally are treated in the same manner as the testimony from lay witnesses, and therefore may be rejected for reasons germane to the source. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. § 416.913(d). The ALJ, however, may not reject an other medical source *solely* on the basis that he or she is not an acceptable medical source. *See id.* Because the ALJ appeared to do so here, instead of specifically finding Ms. Leydon's opinion deserved less weight than those of other, acceptable medical sources in the record, he erred.

The ALJ also mischaracterized Ms. Leydon's opinion in stating it did not "specifically describe [plaintiff's] level [of] functioning." AR 26. Defendant argues Ms. Leydon's opinion leaves open the questions of whether plaintiff is capable of handling or fingering, with which hand he can perform such tasks, and how frequently he can perform them. The Court disagrees. Ms. Leydon stated plaintiff "[m]ight be capable of work that would allow him to be seated so long as [sic] does not require fine motor control of upper extremities." AR 351. It is not at all clear why the ALJ believed this to be insufficiently specific, or why a functional limitation based on Ms. Leydon's statement could not be assessed. Indeed, defendant cites to no authority for the

ORDER - 8

proposition that in order for an ALJ to accept an assessed functional limitation, it must arise to the level of specificity asserted above. The Court, therefore, finds the ALJ erred in rejecting Ms. Leydon's opinion on this basis as well.

II.     The ALJ's Evaluation of the Lay Witness Evidence from Plaintiff's Parents

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

With respect to the lay witness evidence from plaintiff's parents, the ALJ stated it was "inconsistent with the medical evidence of record" and thus did "not support finding greater limitations than" the ALJ himself found. AR 27. The Court agrees with plaintiff that the ALJ's mere statement that the lay witness evidence was inconsistent with the medical evidence, without giving any idea as to what in the medical evidence was inconsistent therewith, is insufficiently specific in that it prevents the Court from determining whether or not the ALJ was in fact correct in so finding. Further, as discussed above, the ALJ's evaluation of the medical evidence in the record is not entirely free of error, and therefore his reliance on that evidence to discount the lay witness evidence in this case is suspect for this reason as well.

III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a

ORDER - 9

claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that plaintiff had the RFC to perform:

**. . . sedentary work as defined in 20 CFR 416.967(a) except that he can lift or carry 20 pounds occasionally and 10 pounds frequently. He should not climb ladders, ropes or scaffolds. He can occasionally crawl and kneel. He can frequently climb ramps and stairs. He can frequently stoop. He should not reach overhead with the right upper extremity. He should avoid concentrated exposure to airborne pollutants. He can perform simple repetitive tasks. He can have occasional superficial contact with coworkers. He should have no contact with the public. He can have few, if any, changes in work routine or setting.**

ORDER - 10

1  AR 21 (emphasis in original). However, because as discussed above the ALJ erred in evaluating

2  the medical and lay witness evidence in the record, it cannot be said that this RFC assessment

3  completely and accurately describes all of plaintiff's functional capabilities. Accordingly, here

4  too the ALJ erred. The Court also agrees with plaintiff that the ALJ failed to properly account for

5  the limitation that plaintiff "is able to interact with few supervisors" assessed by Michael Brown,

6  Ph.D., even though the ALJ gave Dr. Brown's opinion "significant weight." AR 25, 115.

7

8       Defendant argues that "[t]he ability to interact with 'few supervisors' is not a functional

9  restriction, but an affirmative statement that Plaintiff is capable of interacting with supervisors,"

10  and that "'[f]ew' is an indefinite term that does not correlate with any particular number; but

11  common sense dictates that in a normal workplace a worker would interact with only a few

12  supervisors." Dkt. 12, pp. 12-13. Clearly, though, whenever an individual is limited in terms of

13  the number of individuals he or she can have contact with – particularly in the case of those who

14  would supervise him or her – this amounts to a restriction on that individual's ability to function

15  in the workplace. In addition, although it may be that the term "few" generally denotes a fairly

16  small number, where that number in fact falls in regard to its functional relevance with respect to

17  the workplace in the context of Social Security disability claims, is best left to those with the

18  knowledge and/or experience to make that determination – such as vocational experts – rather

19  than to "common sense." Further, one presumes that Dr. Brown would not have used the term

20  "few" if he in fact believed plaintiff's ability to interact or get along with supervisors was not

21  restricted in a meaningful way.

22

23

24  IV.   The ALJ's Findings at Step Five

25       If a claimant cannot perform his or her past relevant work, at step five of the disability

26  evaluation process the ALJ must show there are a significant number of jobs in the national

ORDER - 11

economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's RFC assessment. *See* AR 62-66. In response, the vocational expert testified that an individual with those limitations – and with the same age, education, and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 28-29. Again, however, because the ALJ erred in evaluating the medical and lay witness evidence in the record and in assessing the plaintiff's RFC – including the failure to fully incorporate all of Dr. Brown's assessed limitations – the hypothetical question cannot be said to completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step five determination is not supported by substantial evidence and is in error.

ORDER - 12

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion and lay witness evidence in the record, plaintiff's RFC and his ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the

ORDER - 13

findings contained herein.

DATED this 2nd day of July, 2015.


Karen L. Strombom
United States Magistrate Judge

ORDER - 14